Keith R. Thorell, *pro hac vice*
**KORSHAK, KRACOFF, KONG & SUGANO, LLP**
1640 S. Sepulveda Blvd., Suite 520
Los Angeles, CA 90025
310-996-2340
310-996-2334 Fax

Anjanette Cabrera
Constangy, Brooks, Smith & Prophete, LLP
620 Eighth Avenue, 38th Floor
New York, New York 10018
(646) 341-6536
(646) 341-6543 Fax
*Attorneys for Defendant Southern
Glazer's Wine and Spirits, LLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TATIANA HERDOCIA and ENA SCOTT,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHERN GLAZER'S WINE & SPIRITS f/k/a SOUTHERN WINE & SPIRITS OF AMERICA, INC. and WINE, LIQUOR & DISTILLERY WORKERS UNION, LOCAL 1-D,<br><br>Defendants. | CASE NO.: CV-18 5284 JMA ARL<br><br>**DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MEMORANDUM OF LAW IN REPLY RE ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT Fed R. Civ. P. 12(b)(6)** |

**TABLE OF CONTENTS**

I. **INTRODUCTION.** ........................................................................................................................ 4

II. **ARGUMENT AND AUTHORITIES.** ........................................................................................ 4

    A. PLAINTIFFS' OPPOSITION ADMITS PLAINTIFFS HAVE SIMPLY RELABELED THE SAME ACCUSATIONS BARRED BY *RES JUDICATA* AS RETALIATION. ............................................... 4

    B. NONE OF THE SUPPOSED "FRESH" FACTS NOTED IN PLAINTIFFS' OPPOSITION SUPPORT AN ACTIONABLE RETALIATION CLAIM. ........................................................................................ 7

        1. *Plaintiffs' Claims Regarding Top Pay Were Litigated in the Original Lawsuit.*............ 8

        2. *Plaintiffs' Claim of a Job Title Change is a Lie.* ............................................................ 9

        3. *Removing a Window Cover from an Office Is Not Retaliation.* .................................. 11

        4. *Plaintiffs' Alleged Reprimand Is Not Actionable Retaliation.* ..................................... 11

        5. *Plaintiffs' Remaining Allegations Repeat Claims Already Held Not to Constitute Retaliation.* ....................................................................................................................... 12

III. **CONCLUSION** ......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980) ................................ 5, 7

Delaney v. Bank of Am. Corp., 766 F.3d 163 (2d Cir. 2014) ...................................................... 11

Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 400 F.3d 139 (2nd Cir. 2005) ............... 5, 6, 7, 8

Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011) ............................. 10

Samuels v. N. Telecom, Inc., 942 F.2d 834 (2d Cir. 1991) ............................................................ 6

Scaria v. Rubin, 117 F.3d 652 (2d Cir.1997) ............................................................................... 12

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2nd Cir. 2015) .................................... 11

Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370 (S.D.N.Y. 1999), aff'd, 207 F.3d 105 (2d Cir. 2000) ................................................................................................................................. 5

**Statutes**

29 U.S.C. § 158(a)(1)-(5) .............................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 4

Fed. R. Civ. P. 41(a)(1)(A) ........................................................................................................... 6

I. INTRODUCTION.

Plaintiffs' Opposition concedes the claim-foreclosing point: Plaintiffs have recycled the same allegations made in the original lawsuit, newly labeled them as retaliation, and attempt to use these already-litigated claims to support the Amended Complaint. Moreover, Plaintiffs invent an entirely new allegation of changed job titles and responsibilities which directly contradicts the sworn statements they made in their EEOC affidavits. Not only are these new-found "facts" barred by *res judicata* but Plaintiffs never exhausted their administrative remedies as to these claims. The remaining "new" allegations supporting Plaintiffs' Amended Complaint do not constitute actionable retaliation. The law does not permit Plaintiffs' machinations.

Plaintiffs have had chance after chance to avoid the inevitable consequence of their dismissal *with prejudice* in their original lawsuit. Plaintiffs received leave to amend after the Court sustained the original motion to dismiss. Plaintiffs received an extension of time until October 31 when they failed to file opposition by the Court-ordered deadline of August 31. Plaintiffs received another extension when they failed to oppose by the Court-ordered deadline of October 31. Despite all of these chances, Plaintiffs still cannot articulate an actionable retaliation claim. Their chances have run out. This Court should grant Defendant Southern Glazer's Wine and Spirits, LLC's ("SGWS") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

II. ARGUMENT AND AUTHORITIES.

A. Plaintiffs' Opposition Admits Plaintiffs Have Simply Relabeled the Same Accusations Barred by *Res Judicata* as Retaliation.

Plaintiffs' Opposition brazenly admits precisely what SGWS's Motion emphasizes: "The Amended Complaint simply converts Plaintiffs' previously dismissed and barred allegations of sex discrimination to allegations of retaliation." (Motion (Doc. 34-1), p.11.) According to Plaintiffs, "the same or similar behaviors of Defendants as alleged in the original Complaint which did not qualify as gender discrimination behavior, can nonetheless

4

qualify as retaliatory behavior." (Opposition (Doc. 44), p.9.[1]) Plaintiffs believe that, although these already-litigated facts could not support claims of sex discrimination under principles of *res judicata* based on the Court's Order on SGWS's initial 12(b)(6) Motion, they "can nonetheless qualify as retaliatory behavior." (Id.) This is so obvious to Plaintiffs that they point out that "[i]t is horn book [*sic*] law that discrimination and retaliation are discrete causes of action." (Id.) Plaintiffs' arguments, without citation to legal authority, reveal a fundamental misunderstanding of *res judicata* and this Court's previous ruling.

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980). An important goal of the *res judicata* doctrine is to "relieve parties of the cost and vexation of multiple lawsuits." Id. "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*. In sum, new legal theories do not amount to a new cause of action as to defeat *res judicata*." Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999), aff'd, 207 F.3d 105 (2d Cir. 2000) (internal citations omitted). To paraphrase Plaintiffs, it is hornbook law that a party cannot simply file a new suit alleging the same facts but claiming a new cause of action following an adverse result. *Res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits." Allen, 449 U.S. at 94.

Nothing in the Court's previous Order allows Plaintiffs to simply repurpose their already-litigated gender discrimination claims as allegations of retaliation. The Order cited Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 400 F.3d 139 (2nd Cir. 2005). In that case, the defendant terminated the plaintiff's employment while plaintiff's discrimination lawsuit remained pending. Id. at 140. Defendant obtained summary judgment as to the discrimination

---

[1] The pagination at the bottom of the pages of Plaintiffs' Opposition differs from that placed in the header by the ECF. Throughout this Reply, SGWS cites to the page number found in the ECF header. Thus, this quote is on page 9, although the bottom of the page indicates page 5.

lawsuit (which did not include the retaliatory termination claim as the termination post-dated the discrimination lawsuit) and sought to bar plaintiff's subsequent retaliation lawsuit. Id. The Second Circuit allowed the retaliation claim to go forward. Id. at 141. While Legnani resembles this case in that Plaintiffs here seek to litigate a retaliation claim following an adverse result in a discrimination case, the resemblance is barely skin deep.

For one, that case involved a summary judgment ruling and not a dismissal with prejudice. The distinction is important. The Second Circuit has noted the broad preclusive effect of a dismissal with prejudice. "To be sure, a dismissal *with prejudice* was a risky choice if future litigation was contemplated, since it would wipe out all claims that *could* have been asserted in the dismissed suit." Samuels v. N. Telecom, Inc., 942 F.2d 834, 837 (2d Cir. 1991) (emphasis in original) (noting that allegations take "on heightened significance when the parties agreed to dismiss with prejudice"). A dismissal following the appearance of all parties may only be accomplished through Court order or stipulation. See Fed. R. Civ. P. 41(a)(1)(A). In the Original Action, the parties stipulated to the dismissal *with prejudice* and the Court adopted the stipulation as its Order. (See Original Action, Doc. 27.) What party would stipulate to dismissal with prejudice if doing so meant the dismissing party could simply turn around and file a new lawsuit with a different cause of action based on all of the same allegations? What Court would order such a dismissal if it meant the parties would shortly be back before it litigating all of the same claims? The Second Circuit labels a dismissal with prejudice "a risky choice" precisely because it wipes out Plaintiffs' ability to file a new lawsuit with a different cause of action based on the same claims.

More importantly, unlike Legnani, most of the allegations that Plaintiffs now claim to support retaliation existed at the time they filed the original lawsuit. As seen below, allegations regarding "top pay" and work performed by male coworkers appeared in Plaintiffs' original Complaint, filed in the first action. These were claims actually litigated and dismissed in the first action! No case supports the notion that Plaintiffs can re-litigate the same claims only with a different legal theory. Quite the opposite: "a final judgment on the merits of an action

6

precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen, 449 U.S. at 94.

Plaintiffs' Opposition fundamentally misunderstands the law. According to the Plaintiffs, *res judicata* has no application in this case because the "doctrine disregards Judge Lindsay's decision which enabled Plaintiffs to plead retaliation claims in the Amended Complaint precisely because they were not plead in the original Complaint." (Opposition, p.8.) Since the order "explicitly allowed for the raising of the retaliation claims, *res judicata* in whatever guise, just doesn't apply to this permitted Amended Complaint." (Id.) In short, Plaintiffs believe the Order gives them *carte blanche* to re-litigate all of the same claims as the first lawsuit under the "guise" of retaliation, instead of gender discrimination. Plaintiffs are simply wrong.

The Court's Order was very clear that "claims arising *subsequent to a prior action* are generally not barred by *res judicata*." (See Order, p.10 (citing Legnani) (emphasis added).) Here, Plaintiffs continue to use allegations contained in their original lawsuit to support these claims of retaliation. As shown below, the very few allegations Plaintiffs make that did not already exist at the time the original lawsuit was filed do not constitute actionable retaliation. The *only* allegations alleging a loss of pay are those that existed at the time Plaintiffs filed the first case and which appeared in the Complaint in that action. Plaintiffs cannot resuscitate these claims by simply slapping the new label of "retaliation" on them. These claims have already been litigated. This Court must dismiss Plaintiffs' case.

      B.     <u>None of the Supposed "Fresh" Facts Noted in Plaintiffs' Opposition Support an Actionable Retaliation Claim</u>.

Plaintiffs conveniently list the five "fresh retaliation claims" that they contend allow their Amended Complaint to proceed. (See Opposition, pp. 5-7.) One need only examine each to see that there is nothing "fresh" or actionable about these claims.

1. <u>Plaintiffs' Claims Regarding Top Pay Were Litigated in the Original Lawsuit</u>.

The first set of "fresh retaliation claims" (Opposition, p.5) alleges that Plaintiffs underwent a job title change with more onerous duties added, "were not compensated for the more onerous work equally with the males," were paid less per hour than the males and were refused "proper job titles and compensation" when they asked for them. (<u>See</u> Opposition, pp. 5-6.) In paragraph 27 of the Complaint filed in their original lawsuit, Plaintiffs alleged they were paid "less than male coworkers and union members that performed job duties substantially similar to Plaintiffs." (Original Action Complaint, ¶27.) In paragraph 29 of that Complaint, Plaintiffs allege that they "inquired about top pay but were informed by their Shop Steward . . . top pay did not apply to Plaintiffs' department because they were 'clerical.'" (Original Action Complaint, ¶29.) In paragraph 30 of that Complaint, they allege that they did "operate heavy machines and were certified to do so; however, their rate of pay was never adjusted to that of their similarly situated male co-workers." (Original Action Complaint, ¶30.) These are the same allegations! Plaintiffs were paid less than males despite doing "onerous work equally with the males." (<u>Compare</u> Opposition, p.6 <u>with</u> Original Action Complaint, ¶¶27-31.)[2] Plaintiffs only received a 35-hour workweek as "clerical" employees under the collective bargaining agreement. (<u>Id</u>.) This is not <u>Legnani</u> where the plaintiff's employment terminated during the case; *all of these things already existed at the time the first case was filed*. That's why they appear in the Original Action Complaint!

---

[2] Plaintiffs' Opposition reveals confusion as to these points. Plaintiffs point to page 10 of SGWS's Motion which cites paragraphs 27-31 of the Complaint in Plaintiffs' original lawsuit. (<u>See</u> Motion, p.10) The Opposition apparently confuses the complaint in the original lawsuit with the first complaint filed in this case. It claims, "the cited paragraphs say nothing of this kind." (Opposition, p.9.) According to Plaintiffs, "The Amended Complaint's retaliation claims raise retaliations [*sic*] as to pay increases, lost pay and benefits due to retaliation, for the first time." (<u>Id.</u>) It may be the first time in this case, but the exact same allegations of "lost pay and benefits" existed in the complaint filed in their original lawsuit. (<u>See</u> Original Action Complaint, ¶¶27-31.) And that is the point. This might be the first time these same allegations have been called "retaliation" but not the first time the parties litigated these precise claims.

8

The notion in the Opposition that "[w]hen Plaintiffs asked for proper job titles and compensation, the employer refused that request, in retaliation for the 2014 complaint" is facially ridiculous. SGWS does not have the right to unilaterally alter the terms and conditions of Plaintiffs' employment (such as changing their job titles or compensation). Plaintiffs have been union members at all relevant times. (Amended Complaint, ¶6.) Under federal law, an employer cannot alter the terms and conditions of employment without bargaining over it with the Union. See 29 U.S.C. § 158(a)(1)-(5). SGWS owes no duty to Plaintiffs to change their compensation. SGWS never discriminated against Plaintiffs. Their dismissal *with prejudice* and the Court's earlier Order confirm that. More importantly, the issues of their pay and job duties were litigated in the Original Action! (Original Action Complaint, ¶¶27-31.)

2. Plaintiffs' Claim of a Job Title Change is a Lie.

The sole truly "fresh retaliation claim" in the Amended Complaint is that "Plaintiffs' job titles were changed from Inventory Control Clerks to Cycle Counters and more onerous physical duties and conditions of employment were added." (Opposition, pp.5-6.) The allegation is a lie.

Plaintiffs' own sworn statements, submitted to the EEOC to kickstart the instant lawsuit, prove the falsity of this new claim. In those sworn affidavits, each Plaintiff states, "I have been working for [SGWS] since in or around January 2008 *as a warehouse inventory control clerk*." (Complaint (Doc. 1), p. 9 at ¶5 (Plaintiff Herdocia's affidavit); p. 16 at ¶5 (Plaintiff Scott's affidavit) (emphasis added).) These statements could not be clearer. From January 2008 to at least July 2017 when they signed the affidavits, they were employed *as warehouse inventory control clerks*. The sworn affidavits—signed one year after the supposed job title and job duty changes—*contain no reference whatsoever to a new job title of "Cycle Counter" nor any mention of changes in duties*. (See Complaint (Doc. 1), pp. 8-13; 15-20.)

Plaintiffs' Opposition attempts to explain away the lie exposed by their sworn affidavits by claiming that "[a]n EEOC Complaint is not a formal Complaint in this court."

9

(Opposition, p.8.) As if lying is permitted in proceedings before the EEOC or this Court. Both affidavits start by setting forth the affiant's name and stating, "being duly sworn, deposes and says." (Complaint (Doc. 1), p. 8 (Plaintiff Herdocia's affidavit); p. 15 (Plaintiff Scott's affidavit).) Both Plaintiffs signed a Charge of Discrimination incorporating the affidavit ("See Attached Affidavit") directly under a statement reading "I declare under penalty of perjury that the above is true and correct." (Complaint, p.7; p.14.) Although Plaintiffs' Opposition claims, "Rules for EEOC laypeople applications are not stringent," (Opposition, p.8) both affidavits were notarized by the lawyer who represented Plaintiffs in the Original Action. (Compare Original Action Complaint, p.8 (signed by Jose G. Santiago) with Complaint, pp. 7, 13, 14, 20 (signed by Jose G. Santiago).) These were not *pro se* laypeople seeking help from the EEOC. The attorney who had stipulated to dismiss their case *with prejudice* not two months before actively assisted in their efforts to relitigate their failed claims.

        The Second Circuit has long recognized in conjunction with summary judgment proceedings that a party's contradictory pleading and sworn testimony cannot be credited so as to defeat summary judgment. "These new allegations, directly contradicted by her prior sworn statements and judicial admissions, were properly rejected by the District Court after a careful consideration of the record before it." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 105 (2d Cir. 2011). "To hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings (or, as here, to facts *not* alleged in their pleadings), would 'license the mendacious to seek windfalls in the litigation lottery.'" Id. at 106. Plaintiffs' new allegations in the Amended Complaint are no different than the conduct in Rojas. Plaintiffs contradict their own sworn affidavits in their Amended Complaint in an attempt to avoid the consequence of a dispositive motion. Courts must not "license the mendacious to seek windfalls in the litigation lottery." Id.

3. Removing a Window Cover from an Office Is Not Retaliation.

The next "fresh claim" highlighted in the Opposition is that "[t]he employer built a discrete male locker room for the Warehousemen, but removed a window cover from an office where Plaintiffs would change their clothes . . ." (Opposition, p.6.) "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2nd Cir. 2015) (internal citations omitted). Refusing to allow Plaintiffs to repurpose an office to a changing room is exactly the "mere inconvenience" that the Second Circuit held does not constitute retaliation in Vega. Nothing in this allegation "altered Herdocia's or Scott's job responsibilities, amounted to a demotion or involved a change in their rate of pay or benefits." (Order, p.12.) This is not actionable retaliation.

4. Plaintiffs' Alleged Reprimand Is Not Actionable Retaliation.

Plaintiffs' Opposition asserts that "Plaintiff Herdocia was wrongly given a written reprimand, placed in her personnel file, for absence when she had a doctor's note for her absence . . ." (Opposition, p.7.) This is virtually identical to the allegations the Court already held cannot support retaliation because "[n]one of these acts appear to have altered Herdocia's or Scott's job responsibilities; amounted to a demotion or involved a change in their rate of pay of benefits." (Order, p.12.) This supposed reprimand neither altered her job responsibilities, amounted to a demotion, nor involved a change in rate of pay or benefits. The Amended Complaint does not even allege that it did! Plaintiffs' Opposition labels this "a new and substantively different claim," but entirely misses the point: *this is not actionable retaliation*. Courts "do not sit as a super-personnel department that reexamines an entity's business decisions." Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) citing Scaria v.

Rubin, 117 F.3d 652, 655 (2d Cir.1997) (citation omitted)[3]. This Court must grant SGWS's Motion to Dismiss.

### 5. Plaintiffs' Remaining Allegations Repeat Claims Already Held Not to Constitute Retaliation.

Plaintiffs' Opposition claims that they "also made discrete claims of having received an arbitrary and capricious written reprimand for riding together in a cherry picker . . . and of having been humiliatingly expelled from a Safety Committee meeting . . ." (Opposition p.7.) These *exact* claims appeared in the first Complaint. (See Order, p.12 ¶¶ 2-3.) The Court held "the conduct relied upon in support of the retaliation claims do not amount to materially adverse actions." Repeating the same allegations already held insufficient to support retaliation cannot change the outcome. The Amended Complaint is equally deficient as the first.

Plaintiffs' Opposition attempts to distinguish the Amended Complaint because "[t]he new pleadings allege different, more substantively damaging motives of Defendants." (Opposition, p.7.) As if someone's motivation could change whether a particular action altered the Plaintiffs' job responsibilities, amounted to a demotion or involved a change in rate of pay or benefits. (See Order, p.12.) The point is that retaliation requires a materially adverse employment action and the Court has already held these are not materially adverse employment actions! (See Order, pp.11-12.)

### III. CONCLUSION

Plaintiffs have had their chance (the original lawsuit dismissed *with prejudice*), and their chance (the first Complaint in this action, to which SGWS's motion to dismiss was sustained with leave to amend), and yet another chance (the Amended Complaint), and a further chance (their request for extension of time after failing to comply with the August 31 deadline to

---

[3] Of course, even if the alleged discipline could support a retaliation claim, it does nothing for Plaintiff Scott for whom no such allegation exists.

oppose), and still another chance (their Opposition untimely filed nearly three weeks after their October 31 deadline to oppose). Despite all of these chances, Plaintiffs still cannot articulate a single actionable allegation supporting a meritorious claim of retaliation. Plaintiffs have exhausted all chances. This Court should grant SGWS's Motion to Dismiss without leave to amend.

Dated: December 11, 2020          Respectfully Submitted,

/s/ Keith R. Thorell
Keith R. Thorell, *pro hac vice*
KORSHAK, KRACOFF, KONG & SUGANO, LLP
1640 S. Sepulveda Blvd., Suite 520
Los Angeles, CA 90025
(310) 996-2340
Keith@kkks.com

Anjanette Cabrera
Constangy, Brooks, Smith & Prophete, LLP
620 Eighth Avenue, 38th Floor
New York, New York 10018
(646) 341-6536
acabrera@constangy.com
*Attorneys for Defendant*
*Southern Glazer's Wine and Spirits, LLC*

CERTIFICATION OF SERVICE

The undersigned hereby certifies that on December 11, 2020, DEFENDANT SOUTHERN GLAZER'S WINE AND SPIRITS, LLC'S MEMORANDUM OF LAW IN REPLY RE ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT were served on the persons listed below via ecf:

| | |
|---|---|
| John Ray, Esquire<br>Ray, Mitev & Associates, LLP<br>122 N. Country Road<br>PO Box 5440<br>Miller Place, NY 11764<br>e-mail: info@raymitevlaw.com<br>tel: (631) 473-1000 | J. Warren Mangan, Esquire<br>O'Connor & Mangan, P.C.<br>271 North Avenue, Suite 206<br>New Rochelle, NY 10801<br>e-mail: ocmlawyers@aol.com<br>tel: (914) 576-7630, ext. 15 |

Dated: December 11, 2020

                                        /s/ Keith R. Thorell

                    Keith R. Thorell
                    KORSHAK, KRACOFF, KONG & SUGANO, LLP
                    1640 S. Sepulveda Blvd., Suite 520
                    Los Angeles, CA 90025
                    (310) 996-2340
                    Keith@kkks.com