**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
TATIANA HERDOCIA and ENA SCOTT,

                        Plaintiffs,

          -against-

SOUTHERN GLAZER'S WINE & SPIRITS
*formerly known as* Southern Wine & Spirits of America,
Inc. and WINE, LIQUOR & DISTILLERY WORKERS
UNION, LOCAL 1D,

                       Defendants.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 18-5284 (JMA) (ARL)

**LINDSAY, Magistrate Judge:**

Before the Court, on referral from District Judge Azrack, are the motions of the defendants, Southern Glazer's Wine & Spirits ("Southern Glazer's") and Wine, Liquor & Distillery Workers Union, Local 1-D (the "Local 1-D"), to dismiss the plaintiffs' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the undersigned respectfully recommends that the defendants' motions to dismiss be granted.

## BACKGROUND

The following facts are drawn from the Amended Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

    A.    **The Parties**

The plaintiff, Tatiana Herdocia ("Herdocia"), is a resident of Freeport, New York. Am.

Compl. ¶ 1. The plaintiff, Ena Scott ("Scott"), is a resident of St. James, New York. *Id.* ¶ 2. The defendant Southern Glazer's is a wine and spirits distributor operating in thirty-five states with its principal place of business located at 1600 NW 163rd Street, Miami, Florida 33169. *Id.* ¶ 27. Southern Glazer's maintains a New York office at 313 Underhill Blvd., Syosset, New York 11791 (the "Facility"). *Id.* Local 1-D is a labor organization that represents certain employees of Southern Glazer's. *Id.* ¶ 26; Mangan Aff. ¶¶ 1-6. Local 1-D has an office in Brooklyn, New York. Am. Compl. ¶ 4. Among other groups, Local 1-D represents a classification of employees known as "inventory control clerks." Mangan Aff. ¶ 4.

Herdocia and Scott were hired as inventory control clerks by Southern Glazer's in January 2008. Am. Compl. ¶¶ 22-3. In December 2008, Herdocia joined Local 1-D. *Id.* ¶ 24. Scott joined Local 1-D in February 2009. *Id.* ¶ 25.

**B.     The 2014 Action**

In 2014, Herdocia and Scott began to feel like they were being treated differently than their male warehouse coworkers with regard to pay. See ECF No. 1.[1] Specifically, the plaintiffs felt that:

> 1. the rate of pay negotiated for them by Local 1-D was less than the rate of pay for male coworkers and union members who performed similar job duties;
>
> 2. they were being denied "guaranteed" overtime because Southern Glazer's claimed that they did not check products on trucks on the dock, drive heavy machinery and were allegedly unwilling to work night shifts; and
>
> 3. they were denied "top pay" because they were categorized as "clerical" workers.

*See* 14-cv-3196 (JMA)(ARL), ECF No. 1 ¶¶ 27-30. On May 22, 2014, Herdocia and Scott filed a sex discrimination lawsuit in this Court pursuant to New York Labor Law, the New York State

---

[1] For the sake of clarity, the Court has included some of the background facts alleged in the plaintiffs' initial complaint and in the complaint filed in the 2014 action.

Human Rights Law ("NYSHRL") and the Equal Pay Act. *Id.* For three years, the parties engaged in discovery, attempted to mediate the case and had even begun dispositive motion practice. However, in May 2017, before their opposition to the defendants' summary judgment motion was due, the plaintiffs voluntarily dismissed their claims with prejudice in what they claim was a strategic move. *See* ECF No. 1; *see also* 14-cv-3196 (JMA)(ARL), ECF No. 26.

### C. The 2018 Action and the Alleged Acts of Retaliation

Two months later, Herdocia and Scott filed discrimination charges with the New York State Division of Human Rights and Equal Employment Opportunities Commission ("EEOC").[2] Mangan Aff. ¶ 10; ECF No. 6. The factual allegations set forth in their EEOC affidavits described a continuance of the same course of conduct with respect to pay and a handful of subsequent events all of which had occurred before the plaintiffs sought to voluntarily dismiss the 2014 action. ECF No. 1. On July 2, 2018, the EEOC issued a Right to Sue letter to Herdocia and Scott and, on September 20, 2018, they commenced the instant action claiming that they had been subjected to new discriminatory and retaliatory acts for having filed the 2014 action. ECF No. 1. The plaintiffs, who were appearing *pro se* at the time, completed the Court's form "Complaint for Employment Discrimination" and annexed copies of their EEOC affidavits in lieu of a statement of facts. *Id.* They did, however, indicate on the form complaint that the basis of their discrimination claim was that they were "Not allowed to work overtime because [they] were female and had filed a discrimination complaint against [the defendants]." *Id.*

### D. Dismissal of the 2018 Action

On March 20, 2019 and May 10, 2019, respectively, Local 1-D and Southern Glazer's

---

[2] The plaintiffs were not represented by counsel when they filed the 2017 Charge of Discrimination with the EEOC. Nor were the represented by counsel when they commenced this action. In fact, counsel for the plaintiffs did not appear in this action until January 2019. ECF No. 17.

filed motions to dismiss the initial complaint pursuant to Rule 12(b)(6). On November 1, 2019, those motions were referred to the undersigned. Shortly thereafter, the parties consented to having the undersigned enter a final order with respect to those motions. As such, on March 11, 2020, the undersigned issued an order rather than a report and recommendation granting the defendants' motions to dismiss. ECF No. 25.

In that decision, the Court noted that Herdocia and Scott had stipulated to dismiss all of the claims and defenses asserted in their 2014 action with prejudice and that such a dismissal "constitute[d] a final judgment with the preclusive effect of 'res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the [2014] suit.'" *Id.* There was no question that the discriminatory conduct described in the 2018 complaint, that being, the inability to work as much overtime was directly related to the original pay disparity claim. ECF No. 1, Herdocia EEOC Aff. ¶¶ 7-13. In fact, all of the conduct alleged in the compliant had occurred between September 2016 and May 2017, before Herdocia and Scott sought to voluntarily dismiss the 2014 action.

Nonetheless, because some of the alleged retaliatory conduct postdated the day the 2014 complaint was filed, the Court also considered the plausibility of the retaliation allegations to the extent they addressed something other than pay disparity. In doing so, the Court dismissed the balance of the retaliation claims finding that the conduct relied upon by Herdocia and Scott did not amount to a materially adverse change in the terms or conditions of their employment. *Id.* Read liberally, their additional retaliation allegations were as follows:

1. Frank Cognetti ("Cognetti'), the head of Local 1-D, and Troy Golding ("Golding"), their assistant shop steward, would not tell them whether the 2014 lawsuit would be a barrier to their application for a checkers position;

2. Scott and Herdocia received a written rather than an oral warning after Scott let Herdocia ride on a picker with her as a passenger;

4

3. Herdocia and Scott were barred from attending "voluntary" safety meetings after they had missed the first meeting;

4. A manager would not talk to them at a weekly "toolbox" meeting; and

5. A shop steward told co-workers that Herdocia and Scott were not permitted to hang signs or be in the warehouse unless they were "cycle counting."

ECF No. 1. Although the undersigned found these allegations to be insufficient, the Court afforded the plaintiffs an opportunity to replead the retaliation claim since they had initially appeared *pro se*.[3]

On May 11, 2020, the plaintiffs filed an Amended Complaint setting forth two causes of action: retaliation pursuant to Title VII and retaliation under the NYSHRL. ECF No. 27. The new allegations have been summarized by the plaintiffs as follows:

a. The plaintiffs' job titles were changed to "cycle counters" in July 2016, which involved more physical duties in the warehouse but they received less compensation than male "warehousemen" and "checkers;"

b. Southern Glazer's refused the plaintiffs' request to be reclassified as machine operators or checkers;

c. The plaintiffs were not permitted to work more than 35 hours per week whereas male warehousemen and checkers were allowed to work 40 hours per week enabling then to earn more than the plaintiffs;

d. Cycle counter was not a title covered by the collective bargaining agreement so Southern Glazer's was able to avoid paying the plaintiffs at the rate it was paying male warehousemen and checkers;

e. Officials and representatives from Local 1-D refused to communicate with or represent the plaintiffs with respect to their change of job duties and titles and Southern Glazer's refused to classify and compensate them accordingly;

f. Local 1-D officials refused to provide the plaintiffs with essential employment information including the entry into and publication of a new collective bargaining agreement;

---

[3] Over the defendants' objections, the Court ruled in this regard despite the fact that counsel made no attempt to amend the pleadings after he appeared in the case.

  g. In collusion with Southern Glazer, Local 1-D's ostracized the plaintiffs and thereby prevented them from effecting any change in status and pay;

  h. Despite the plaintiff's complaints in 2017 as to their classification and pay, Southern Glazer's refused to investigate the matter;

  i. Local 1-D refused to pursue the grievance filed by the plaintiffs;

  j. On January 6, 2017, the plaintiffs were arbitrarily reprimanded for riding together in a cherry picker, a common practice of the male warehousemen, and copies of the written reprimand were placed in their personnel files;

  k. In 2017, the plaintiffs were expelled from an employer Safety Committee meeting attended by employees and Local 1-D officials;

  l. In 2017, Southern Glazer's built a male locker room for the warehousemen to change clothes. Thereafter, at their request, the plaintiffs were given permission to install a window cover in a back office so that they could also change clothes. But then Southern Glazer's vice president intentionally deprived them of their privacy by taking down the window cover; and

  m. In May/June 2018, Herdocia was wrongfully reprimanded for having been absent when she went to her Lupus doctor despite providing Southern Glazer's with a doctor's note.

Am. Compl. ¶¶ 12-9, 30.

  On May 22 and 29, 2020, the defendants sought leave to file the instant motions to dismiss the amended complaint. Those requests were referred to the undersigned to set a briefing schedule and to issue a report and recommendation with respect to the motions. The defendants now contend that the plaintiffs have simply recycled the same allegations made in the original lawsuit and newly labeled them as acts of retaliation. They also take issue with the fact that the plaintiffs have invented an entirely new allegation of "changed job titles and responsibilities," which they argue directly contradicts the plaintiffs' sworn EEOC affidavits.

## DISCUSSION

**A.** **Standards of Law**

  "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a

6

plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)).  The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

     **B.**     **The New Retaliation Claims**

As the Court stated in its prior decision, "[t]o make out a prima facie claim of retaliation [under Title VII or the NYSHRL], a plaintiff must make an initial showing of (1) participation in a protected activity; 2) the defendant[s'] knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  Herdocia and Scott generally contend that the defendants retaliated against them for having filed the 2014 lawsuit.  Under Title VII, protected activity includes both opposing discrimination and

7

participating in Title VII proceedings. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Although the plaintiffs had not asserted a Title VII claim in 2014, choosing instead to assert claims under the Equal Pay Act of 1963, the NYSHRL and the NYLL, the undersigned has already determined that the 2014 action certainly included claims of gender discrimination, and thus, amounted to protected activity.

Accordingly, this case, once again, turns on whether the plaintiffs have set forth a plausible set of facts sufficient to satisfy the adverse employment action element. The Court finds that they have not. To begin with, for the second time, the plaintiffs have attempted to dress their pay disparity claim in a retaliation suit of clothes. Specifically, in an attempt to draw a distinction between the original pay disparity and the new allegations, the plaintiffs claim to raise "for the first time" that they were retaliated against with respect to pay increases, lost pay and benefits. While it is true that the amended complaint now recharacterizes the disparity as a difference in pay received by "cycle counters" and "male warehousemen," there is no question that these new allegations are a continuation of the discrimination claims that were previously dismissed.

Indeed, although the plaintiffs now allege a change in "job title," which will be discussed in greater detail below, the plaintiffs have been arguing since 2014 that they were performing similar functions as male warehousemen but were receiving less pay. *See* 14-cv-3196 (JMA)(ARL), ECF No. 1 ¶30. For example, the 2014 complaint included the following allegations:

> 18, 20. In or around January 2008, [plaintiffs] began [their] employment with [Southern Glazer's] as inventory control clerk[s] - warehouse.
>
> 24. In or around November 2008, the members of Plaintiffs' department submitted paperwork to join Local 1-D as their job duties were substantially similar to those performed by male union members at [Southern Glazer's] that

is, [the plaintiffs] worked in the warehouse checking product and operated heavy machinery on a daily basis as part of their job duties.

25. In or around December 2008, Plaintiffs officially became union members. At that time, union shop steward Ronald Riordan informed plaintiffs that they were classified as Local ID "warehouse clerical," a category not in the CBA at that time.

26. Upon information and belief, Local 1-D negotiated [Southern Glazer's] on behalf of Plaintiffs the terms and condition of their employment, including but not limited to their rate of pay.

27. Upon information and belief, the rate of pay negotiated between Local 1-D and [Southern Glazer's was less than male coworkers and union members that performed job duties substantially similar to Plaintiffs.

28. In or around November 2009, Plaintiffs' department requested to work the guaranteed two and a half (2.5) hour weekly overtime given to male warehouse union workers. They were informed by their Shop Steward, Riordan that said overtime did not apply to Plaintiffs' department because they were "clerical."

29. In or around November 2009, Plaintiffs' department inquired about top pay but were informed by their Shop Steward, Riordan, tha[t] top pay did not apply to Plaintiffs' department because they were "clerical."

14-cv-03196 ECF No. 1. In the initial 2018 complaint, the plaintiffs continued to allege that they were "[n]ot allowed to work overtime because [they] were female" and had applied for the "checkers position" even though they were already warehouse employees. ECF No. 1. Following the same pattern, the amended complaint contains substantially identical allegations:

12. . . . Plaintiffs were compensated at lower rates than male Machine Operators and Checkers. . ..

14. Plaintiffs lost pay and benefits accordingly; e.g., fellow warehousepersons worked and were paid for five extra work hours (total 40 hours) per week. Plaintiffs were limited to 35 hours per week of work. Plaintiffs also ought to have been given pay increases such that by November 2016 Plaintiffs would have been earning, for warehouse work, $35.38 per hour, but instead were earning only $25.89 per hour, because of Defendants' retaliation. Currently, Plaintiffs would be earning $37.38 per hour, but Plaintiffs are earning only $29.64 per hour.

30 (e). . . . Union officials and representatives from Local 1-D refused to

9

> communicate with or represent the plaintiffs with respect to their change of job
> duties and titles and Southern Glazer's refused to classify and compensate
> them accordingly; and
>
> 30 (h). Plaintiffs complained about the aforesaid disparities to [Southern
> Glazer's] in October 2017. [Southern Glazer's] failed and refused to
> investigate the matter and to communicate with Plaintiffs as to the matter.

ECF No. 27. As the Court previously ruled, the plaintiffs cannot rely on allegations in the amended complaint that address pay disparity to satisfy the adverse employment action element because they are precluded under the principle of *res judicata*. *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011)(citing *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp. 2d 370, 377 (S.D.N.Y.1999) ("'Thus, *res judicata* prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided.'")).

Moreover, the plaintiffs, once again, attempt to rely on conduct that can best be described as causing them a "mere inconvenience." See *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)("An "adverse employment action" is one which is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Examples of materially adverse employment actions include " 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'")(internal citation omitted). For example, the plaintiffs assert in paragraph 30 of the amended complaint that:

> f. Local 1-D officials refused to provide the plaintiffs with essential
> employment information including the entry into and publication of a new
> collective bargaining agreement;
>
> j. On January 6, 2017, the plaintiffs were arbitrarily reprimanded for riding
> together in a cherry picker, a common practice of the male warehousemen, and
> copies of the written reprimand were placed in their personnel files;[4]

---

[4] Although the Court has accepted the plaintiffs' allegation concerning the written reprimand as true for the purpose

> k. In 2017, the plaintiffs were expelled from an employer Safety Committee meeting attended by employees and Local 1-D officials;
>
> l. In 2017, Southern Glazer's built a male locker room for the warehousemen to change clothes. Thereafter, at their request, the plaintiffs were given permission to install a window cover in a back office so that they could also change clothes. But then Southern Glazer's vice president intentionally deprived them of their privacy by taking down the window cover; and
>
> m. In May/June 2018, Herdocia was wrongfully reprimanded for having been absent when she went to her Lupus doctor despite providing Southern Glazer's with a doctor's note.

ECF No. 27; *see also See Nix v. Cino*, No. 02CV4609 (DLI)(VVP), 2006 WL 2711625, at *5 (E.D.N.Y. Sept. 21, 2006)("Mere reprimands . . ., absent any other negative results, such as a decrease in pay, do not qualify as an adverse employment actions.")(collecting cases); *Stembridge v. City of New York*, 88 F. Supp. 2d 276, 283 (S.D.N.Y.2000) (no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action); *Castro v. NYC Board of Education Personnel*, No. 96 Civ. 63140, 1998 WL 108004, at *7 (S.D.N.Y.1998) ("[A]lthough reprimands . . . may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions.").

Nevertheless, the amended complaint does contain one allegation that could plausibly be construed as adverse employment action—a change in job title resulting in a material loss of benefits and a disproportionately heavy workload. To this end, the plaintiffs allege that in July 2016, Southern Glazer's changed their job title from "inventory control clerk" to "cycle counter." Am. Compl. ¶ 12. They further claim that this change resulted in a loss of pay and benefits and involved "more onerous physical work." *Id.* ¶¶ 12, 14. However, a careful examination of the

---

of this motion, according to Southern Glazer the plaintiffs have failed to mention that the written reprimand was ultimately converted to a verbal warning. Southern Glazer's Mem. at 5.

allegation reveals that it is, nonetheless, non-actionable because it is contradicted by facts of which the Court may take judicial notice. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir.1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice").

First, the plaintiffs now assert that in retaliation for filing the 2014 complaint, they were moved out of the clerical work and entirely into warehouse work, which required them to perform tasks such as using an RF gun, cherry picker or bendi, confirming inventory, relocating cases and bottles and checking inventory on the dock. Am. Compl. ¶12. In fact, Herdocia and Scott allege that in their new role as "cycle counters," they were expected to conform with new uniform rules, like wearing steel toe safety shoes, high visibility vests, gloves and safety harnesses. *Id.* In addition, although Herdocia and Scott concede that as inventory control clerks, they were already performing warehouse work,[5] they now claim that the "physical warehouse work" they had performed as inventory control clerks took place substantially less time. *Id.* Finally, the plaintiffs now assert that "clerical work had been [their] substantial work" until 2016 when their job title was changed. *Id.*

These allegations are flatly contradicted by the plaintiffs' prior allegations and sworn EEOC affidavits, which formed the basis of the initial complaint in this action. For example, in her EEOC sworn statement prepared one year after the alleged change in job title, Herdocia attests:

> *I have been working for [Southern Glazer's] since in or around January 2008*

---

[5] The plaintiffs previously alleged that they performed similar job functions to warehousemen. For example, the plaintiffs asserted that they checked products and operated heavy machines and were certified to do so. *See* 14-CV-3196 (JMA), ECF No. 1 ¶ 30.

> *as a warehouse inventory control clerk.* In or around November 2008, I and my coworkers submitted paperwork to join Local 1[-]D since my job duties were substantially similar to those performed by my male unionized coworkers. *The job duties included, in part, checking product and operating heavy machinery on a daily basis in the warehouse.*

ECF No. 1 (emphasis added). Herdocia further states:

> In or around September 2016, [Southern Glazer's] posted a job opening in its website for a warehouse checkers position.
>
> Although Ena and I believe that *we [were] already warehouse workers*, we decided to apply for the checkers position.

*Id.* (emphasis added). Notably absent from the EEOC affidavit is any reference to a change in job title or responsibility in July 2016. Nor does Herdocia or Scott mention that that "clerical work had been [their] substantial work" until 2016. In fact, until now, the plaintiffs have consistently maintained that as inventory control clerks they were "performing substantially the same work" as male warehouse workers. See 14-cv-03196 (JMA) (ARL); ECF No. 1 at ¶ 31.

In a similar vein, the Court questions the plaintiffs' generalized and attenuated allegations concerning the loss of pay and benefits. The crux of the plaintiffs' new loss of pay and benefits allegation appears to be that warehouse workers were permitted to work five more hours than cycle counters. *See* Am. Compl. ¶ 14. In other words, the plaintiffs are, once again, drawing a comparison between themselves and their male co-workers. However, nothing in the amended complaint suggests that their salary or hours were reduced when their job title was allegedly changed from inventory control clerk to cycle counter. Indeed, read in context, the allegation is simply that by changing their job title, the defendants were able to continue to pay the plaintiffs at the same rate they had been receiving, that is, less than male warehouse workers. As "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or .

13

. . by facts of which the court may take judicial notice," see *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 405–06, the undersigned will not consider the alleged change in job title to be an adverse employment action. *See also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir.1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted both by more specific allegations in the complaint and by facts of which [the court] may take judicial notice").

Finally, to the extent, the plaintiffs have alleged that Local 1-D failed to adequately represent them, the Court rejects the allegations as conclusory. *See Forkin v. Local 804, I.B.T.*, 394 F. Supp. 3d 287, 301-02 (E.D.N.Y. 2019) (rejecting a plaintiffs' conclusory allegation that his union processed his grievance in bad faith); *Napoleoni v. N.Y.C. Dep't. of Parks & Recreation*, 2018 WL 3038502, at *4-5 (E.D.N.Y. June 18, 2018) (explaining that allegations regarding a union's failure to achieve a "positive resolution" of plaintiffs' complaints were conclusory and insufficient). The plaintiffs assert, in this regard:

> e. Defendant Union officials and representatives refused to communicate with Plaintiffs when Plaintiffs attempted to communicate with them regarding any matters, including representing Plaintiffs as to the employer's change of Plaintiffs' job duties and titles . . .. This was done in collusion and connivance with Defendant employer.
>
> f. Defendant Union officials failed and refused to speak or communicate with Plaintiffs and refused to provide Plaintiffs with essential employment information including the entry into and publication of a new collective bargaining agreement. This was done in collusion and connivance with Defendant employer.
>
> g. Defendant Union's aforesaid ostracism of Plaintiffs prevented Plaintiffs from effecting any change in the aforesaid status and pay, without Union assistance. Defendant employer was in connivance with and colluded with Defendant Union in this regard.

ECF No. 27. However, the plaintiffs have offered no details to explain the alleged breach of fair representation or to suggest that Local 1-D's actions were motived by discriminatory animus.

14

Indeed, the plaintiffs simply state that Local 1-D colluded with Southern Glazer's.[6] Accordingly, the Court finds that the conduct relied upon by Herdocia and Scott is insufficient to support their retaliation claim, and therefore, recommends that the amended complaint be dismissed in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiff shall serve a copy of this Report and Recommendation on the defendant upon receipt and shall file proof of service with the Court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
June 16, 2021

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge

---

[6] Given the Court's rejection of the allegations as conclusory, the Court need not address Local 1-D's argument that the plaintiffs failed to exhaust the grievance procedure in the Collective Bargaining Agreement.